```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
     -v.-                                                   :     S1 16 Cr. 281 (PGG)
                                                            :
INES SANCHEZ                                                :
                                                            :
                       Defendant.                           :
                                                            :
------------------------------------------------------------x
```

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
Attorney for the United States of America

Abigail Kurland
Jared Lenow
Christopher Clore
Assistant United States Attorneys
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
          :
UNITED STATES OF AMERICA         :
          :
    -v.-         :    S1 16 Cr. 281 (PGG)
          :
INES SANCHEZ,         :
          :
         Defendant.     :
          :
------------------------------------------------------------x

## **PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in connection with the sentencing of defendant Ines Sanchez, which is scheduled for September 4, 2018.

## **BACKGROUND**

### A.    **Offense Conduct and Guilty Plea**

This case arose from an investigation by law enforcement into a violent street gang called the Blood Hound Brims ("BHB," the "Gang," or the "Enterprise"), which operates in New York State and elsewhere. (PSR ¶ 15.) BHB was founded by co-defendant Latique Johnson in or about 2005 while Johnson was incarcerated in New York State prison and is under the "NYBBA" – the New York Blood Brim Army. (PSR ¶ 17.) The Gang is a subset of the national Bloods gang. The Gang is now active in at least New York and Pennsylvania, and is active both on the street and in federal and state penal systems. (PSR ¶ 17.)

The BHB are divided into several "pedigrees," each of which has its own leadership structure. Some of the pedigrees in New York State include: Greyhound (Harlem); Afghanistan (Brooklyn); Beagle (Queens); 220 Gs (Bronx); Basset (Long Island); and Doubled Breeder Wolf Hound (Westchester Counties). (PSR ¶ 18.) Each pedigree has its own "lineup" or leadership.

(PSR ¶ 18.)    The positions include, in descending order of hierarchy: (5) Financial (in charge of the kitty and dues); (4) Communication (disseminate gang mythology and rules and information regarding gang meetings); (3) Third (security – in charge of firearms and assigning members to "put in work," i.e., commit acts of violence); (2) Second; and (1) First.  (PSR ¶ 18.)  There are also the "Highs" and the "Lows," who are leaders of the gang who are above the line-up.  (PSR ¶ 18.)

BHB had regular meetings called "pow wows" or "9-11s."  (PSR ¶ 19.)  All members of the Gang were expected to attend these meetings.  Word of the meetings traveled by text message, word of mouth and through flyers.  (PSR ¶ 19.)  The Gang's business, including rivalries with other gangs, shootings, the arrests of gang members, guns and drugs were regularly and openly discussed at these meetings.  Kitty dues – money that paid for commissary funds, lawyers, guns and that was tribute to Johnson – were collected at these meetings. (PSR ¶ 19.)

At pedigree meetings all members of the pedigree were expected to attend. "Universal" meetings are for all members of the Gang.  (PSR ¶ 20.)  Some pow wows involved only the leadership of the pedigrees.  (PSR ¶ 20.)  The Gang also had its own code and secret phrases it used to communicate with each other both while in prison and on the street to avoid detection by law enforcement.  (PSR ¶ 20.)  Many of the codes revolved around the concept that the Gang was a "jet."  (PSR ¶ 20.)  Accordingly, a leader would "fly the jet" or a female member was called a "pink jet."  (PSR ¶ 20.)  If a BHB member fell out of favor and was targeted for violence, he or she was kicked out of the "jet" or would have a "jet land on him." (PSR ¶ 20.)

There are also various rules governing the behavior of the NYBBA and the BHB, as well as a constitution and universal codes by which every Brim must abide.  HOUND is an acronym which stands for: Hunter; Observant; Underground; Noiseless; and Dead Game.  (PSR ¶ 21.)

Certain members and associates of the BHB also maintained and shared firearms in order to protect their territory, drug corners and to protect themselves against rival gang members. (PSR ¶ 22.) When a firearm was needed to protect their territory from encroachment by a rival gang, members of BHB could utilize the firearms acquired and stored by other members. (PSR ¶ 22.)

Sanchez was the "Godmother" of the BHB. Johnson used Sanchez to communicate with other gang members when Johnson was incarcerated. (PSR ¶ 24.) Sanchez was also in charge of disseminating BHB paperwork, including the rules and codes of the Gang, as well as keeping track of the members and leadership of the various pedigrees. (PSR ¶ 24.) At the pow wows organized and attended by Sanchez, the business of the gang, including drug dealing, dues, firearms, and the violent rivalries with other gangs, were openly discussed in front of Sanchez. (PSR ¶ 24.) Sanchez also passed messages between incarcerated members of the Gang and members who were on the street, permitting the Gang to coordinate both within and outside of jail. (PSR ¶ 24.) Sanchez also coordinated sending money to incarcerated members of the Gang, including Johnson. (PSR ¶ 24.)

Because of her role as the Godmother of the Gang, organizing pow wows, collecting dues, and inducting new members into the Gang, Sanchez is considered an organizer and leader in the offense. (PSR ¶ 25.)

Prison calls captured Sanchez discussing gang business with Johnson while he was incarcerated. During a May 13, 2015 prison call between Johnson and Sanchez, Sanchez indicated that she wanted to turn a woman named "Mecca" into a Hound. This meant that Sanchez wanted to bring this person into the gang, as she was permitted to induct new gang members. Additionally, in another conversation, Johnson explains to a co-conspirator that

3

Sanchez is the Godmother of the gang, has leadership status, and speaks for Johnson while he is incarcerated. Therefore, Sanchez was allowed to make decisions regarding the gang. Moreover, in one conversation in which Johnson and Sanchez discussed concerns they had about the Gang, Johnson said "we have to save our beautiful Jet." In response, Sanchez states "Whoopty," the Gang's greeting. (PSR ¶ 26.)

In other prison phone calls, Johnson and Sanchez discussed the leadership of the Gang and Johnson gave Sanchez various messages and instructions regarding the Gang. During an April 22, 2015 call between Johnson and the sister of another gang member, Johnson tells the sister that Sanchez is throwing a "bday," i.e., a pow wow, for the Basset (Queens) pedigree and that Sanchez will take care of and collect the "fees," *i.e,* the Gang's dues. (PSR ¶ 27.)

At the time of Sanchez's arrest, law enforcement agents searched her home. They recovered a BHB code sheet (a copy of which was also recovered from a federal jail), a ledger containing the names of Gang members and the amount of dues they owed, and correspondence with members of the Gang, including Johnson and an unindicted coconspirator who is incarcerated in New York State prison. (PSR ¶ 28.)

On June 5, 2017, Sanchez pleaded guilty pursuant to a plea agreement to Count One of the S1 Indictment, which charged her with participating in the Blood Hound Brims racketeering conspiracy. (PSR § 11.)

**B.     Criminal History**

Sanchez has one burglary conviction stemming from an incident on October 12, 2002. Sanchez has four convictions, including two counts of first degree robbery, one count of second degree robbery, and one count of first degree assault, stemming from conduct that occurred on October 13, 2002, during which Sanchez and two others forcibly stole property from a victim,

caused a victim serious physical injury that later resulted in his death, and used or threatened the use of a chair as a weapon against a victim. Sanchez was charged with each of those offenses in a single indictment, and was arrested for those offenses on October 15, 2002. Sanchez was sentenced to one to three years imprisonment on the burglary conviction, and 10 years imprisonment on each of the other convictions, with all sentences run concurrently. (PSR. ¶ 52). Sanchez committed the instant racketeering offense while on parole. (PSR ¶ 54).

C.  **PSR and Guidelines Calculation**

The parties and the Probation Office are in agreement that the applicable offense level is 20, which includes a four-level increase for Sanchez's leadership role in the BHB racketeering conspiracy. (PSR §§ 40-50).

However, the parties and the Probation Office disagree about the calculation of Sanchez's criminal history. The Probation Office takes the position that Sanchez's 2002 convictions in aggregate only results in the assignment of three criminal history points, on the ground that each of the separate convictions resulted from the same charging instrument and the same arrest, and each of the crimes of violence occurred on the same day and targeted the same victim. (PSR ¶¶ 52-53, Addendum). The parties' position, set forth in Sanchez's plea agreement, is that because each of the four convictions was for a crime of violence, those four convictions result in a total of six criminal history points pursuant to U.S.S.G. §§ 4A1.2(a)(2) and 4A1.1(e). Pursuant to those provisions, the sentence imposed for the four crime of violence convictions is counted as a single prior sentence under U.S.S.G. §§ 4A1.2(a)(2), but additional points are added for each sentence for a crime of violence that does not otherwise receive points "because such sentence was treated as a single sentence" under U.S.S.G. § 4A1.1(e). The Government respectfully submits that because the current Guidelines do not distinguish multiple prior crimes that

occurred on the same occasion from multiple prior crimes that occurred on different occasions, the latter interpretation is correct. *See United States v. Tolbert*, 558 F. App'x 701, 704 (7th Cir. 2014) ("Prior sentences for crimes of violence that are counted as a single sentence and not assessed points under subsections (a) through (c) will receive an additional point under subsection (e) whether or not the crimes occurred on the same occasion."). Using the calculations set forth in the parties' plea agreement results in eight criminal history points, and a Criminal History Category of IV.

With an offense level of 20, and using the stipulated Criminal History Category of IV, the defendant's Guidelines range is 51 to 63 months' imprisonment.

## **DISCUSSION**

Sanchez was a high-ranking members of the BHB, maintaining a position of such power and prestige that she spoke for Johnson—the founder of BHB—while he was incarcerated. While Sanchez did not directly participate in the BHB's drug distribution of drugs or commission of violent acts, her role—as an organizer, spokesperson, and financial conduit—facilitated the gang's ability to commit these acts, and allowed the gang to continue to function while Johnson was incarcerated. In particular, Sanchez played a key role in ensuring the gang's ability to operate and grow in prison facilities by helping the gang evade safeguards put in place to prevent gang members in separate facilities from communicating about gang-related business. By furthering the criminal objectives of a gang that was fueled by the drug trade and engaged in numerous acts of violence, Sanchez's actions had real and tangible consequences on communities in which the BHB operated. Moreover, Sanchez's lack of direct involvement in drug trafficking or acts of violent is already reflected in her Guidelines range.

Sanchez's criminal history is also a factor that weighs in favor of a significant sentence. Sanchez participated in a violent robbery in 2002 that caused the death of a victim, and received a 10-year sentence for that crime. Nonetheless, shortly after being released from prison, she joined the BHB and rose to a leadership position in the gang.

The PSR and defendant's submission make clear that Sanchez has endured significant hardships and tragedy in her life, and has herself as been the victim of very serious crimes. The Court should consider those facts in fashioning an appropriate sentence. However, as an adult in her 30s, after recently competing a 10-year prison term, Sanchez made a deliberate decision to assume a leadership role in a violent criminal organization that engaged in large-scale distribution of heroin, crack, and other drugs. Sanchez was deeply committed to the BHB, and her involvement in the gang was long-running and significant.

The Government respectfully submits that a Guidelines sentence of 51-63 months' imprisonment is necessary in this case to reflect the seriousness of the offense, provide just punishment, protect the public, afford adequate general and specific deterrence to criminal conduct and to promote respect for the law.

## **CONCLUSION**

      For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines sentence, which will be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated:  New York, New York
           August 30, 2018

                                   Respectfully submitted,

                                   GEOFFREY S. BERMAN
                                   United States Attorney

                                   By: /s/_____
                                   Abigail S. Kurland
                                   Jared Lenow
                                   Christopher Clore
                                   Assistant United States Attorneys
                                   212-637-2955/1068/1063